HUBBARD, as Adm'r, etc., vs. PACE et al.

1. SURETY : *Discharged by creditor's willful loss of collaterals.*

Lavender, as administrator, let to Pace a farm for 1870, and took his note for the rent, with Taylor as surety, stipulating in the note that he would "retain a lien upon the crop for the payment of the rent." He and Pace were then, and many years afterward, partners in a mercantle firm, and they received of the crop more than sufficient to pay the note, and sold it on the firm account. At the date of the note, Taylor was indebted to Pace in a large amount, which, several years afterward, he paid, without notice that the rent note was unpaid. In August, 1875, Lavender sued Taylor on the note. Taylor pleaded the foregoing facts

Hubbard, as Adm'r, etc., vs. Pace et al.

as an equitable discharge, and the cause was transferred to the equity docket: *Held:*

1. That the retention of the lien in the note was not additional to the statutory landlord's lien, but a mere assurance to Taylor that the legal lien should be enforced for his protection, or at least was not waived, nor would be abandoned.

2. The mere passive conduct of Lavender, in allowing the cotton to be shipped, when by ordinary diligence he could have prevented it, was, in the face of the written obligation, "to *retain* a lien on the crop for the rent," a fraud upon the surety.

Ordinarily, a creditor's mere neglect or forbearance to sue, or his failure to enforce collaterals, will not discharge the surety; but he must not release them, or do any act by which the surety's right of subrogation, upon payment of the debt, may be fruitless to him.

3. The shipment and sale of the cotton by the *firm* was Lavender's *act* and more than passive acquiescence or neglect.

4. That Lavender's acting as administrator did not affect the equities of his surety. .

APPEAL from *Lincoln* Circuit Court in Chancery.

Hon. J. A. WILLIAMS, Judge.

*Carroll & Jones*, and *J. M. Moore*, for appellants.

*Carlton & McCain, contra.*

EAKIN, J. Lavender, as administrator, let to defendant, Pace, a plantation for the year 1870. Taylor became surety for the rent, and this instrument was executed:

" $3,500—On the first day of January next, we, or either of us, promise to pay W. D. Lavender, administrator of the estate of Alfred B. C. DuBose, three thousand five hundred dollars, for rent of fifteenth section of said estate. We agree to put a lawful fence around the place. W. D. L., administrator, agrees to repair gin-house and put the mill

in running order, and retain a lien on the crop, to secure
the payment of the above sum.

"JAMES S. PACE.

" C. M. TAYLOR.

" W. D. LAVENDER,

"*Administrator Estate.*

" SOUTH BEND, January 4, 1870."

Upon this contract, Lavender brought this action at law
in August, 1875.   Taylor set up his suretyship as an
equitable defense, together with charges of such conduct
on the part of Lavender as should release the surety.   The
cause was transferred to the equity docket, and, upon
hearing, the chancellor decreed that Taylor was released,
and should have costs.   From this decree, Lavender, as
administrator, appealed.

It appears from the pleadings and proof, that Lavender
was a partner with Pace, the tenant, in a mercantile house
upon or near the place, principally for the purpose of
furnishing supplies to the plantation and the hands en-
gaged upon it.   Whether he was a partner with Pace in
the planting operations, or not, is a question upon which
the evidence is conflicting ; but it appears, to this court, to
preponderate in favor of such a supposition.   It is shown,
however, beyond question, that all, or the greater part of
the crop made upon the place in 1870, much more than
was necessary to satisfy the rent contract, went into the
hands of said mercantile firm, and was by it shipped and
sold in its name.   At the time Taylor signed the contract,
he was indebted to Pace in a large amount, and remained
so for several years, when he paid.   If, during the time of
his said indebtedness, he had been called upon to pay the
rent note, he might have indemnified himself out of his
debt to Pace.   Lavender continued to rent the place to

Pace for several consecutive years afterwards, and Taylor had no notice that the rent contract of 1870, upon which he was surety, remained unpaid, until shortly before suit. The chancellor found, as a fact, that Lavender and Pace were not partners in the planting operations of 1870, but based his decree upon other equitable considerations.

Under the ruling of this court, in *Roberts v. Jacks, 31 Ark., 597,* appellant contends that the written instrument gave Lavender no specific lien upon the crops to be raised. This may be conceded, as it does not appear from the instrument itself that the parties intended to create any new lien upon the crop, different from that given the landlord by law, or more specific. The clause concerning the lien could have been inserted for no other rational purpose than to give Taylor, who was merely a surety, an assurance that the legal lien would be made effective for his protection, or, at least, that it was not then waived, nor would it be abandoned. This Taylor contracted for, and had the right to rely upon, independent of the general principles regulating the conduct of creditors towards sureties. The merely *passive* conduct of Lavender, in allowing the crops to be shipped, when he might have prevented it by reasonable care and diligence, to say nothing of his direct assent, would, in the face of his written obligation "to *retain* a lien on the crop to secure the payment of the above sum," be a fraud upon the surety.

Ordinarily, mere neglect or forbearance to sue on the part of the creditor, or failure to resort to collateral securities, will not discharge the surety. The creditor has his option. But he must not trifle with the collaterals, or release them, or do any act by which the surety's right of subrogation may be fruitless to him, when he is compelled,

or voluntarily pays the debt. Collaterals are held not for the protection of the creditor alone. The instinct of property, and a sense of justice, should prevent him from destroying them, if he does not choose, or does not find it necessary, to use them. Others have rights, which the creditor will not be allowed to make the subject of his generosity, or wanton misconduct to their injury.

The cotton and other crops came within the power of Lavender. They were put in the hands of the mercantile firm of which he was a partner. The partners were all agents of each other. It was his duty to require the partnership to satisfy the rent note with the proceeds, or to take it up before shipping, and if his co-partners had objected, he had power to prevent the removal. The shipment and sale was his *act*, and more than passive acquiescence or neglect.

None of the questions made are affected by the consideration that Lavender was administrator. If he failed in his duties, or transcended his powers, or violated his trust as such, it is a matter for the heirs, distributees or creditors of the estate of DuBose. In his dealings with third parties, and as between him and them, in cases where those interested in the estate are not parties, he must be bound by the same rules of equity, which would apply to him as an individual; and can not make the distinction between his acts as administrator, and those done in his own right, the means of perpetrating an injustice against his surety.

Indeed, the distinction between the mere negligence, and positive acts of the creditor, whereby collateral securities are lost, has, by the modern decisions, been almost, if not wholly, obliterated. It differs from mere failure to sue the principal. In the case of collaterals, there are distinct things to be preserved, having a property value, which are

in the hands of the creditor in trust, as well for himself as for the sureties, and it is fair that he should be held to take reasonable care of them. See the subject discussed, and the cases collected in *Brandt on Suretyship and Guaranty*, secs. *385, et seq.*

In every view of the case, the decree of the chancellor, below, seems just, and based on sound principle.

Let it be affirmed.